Exhibit G



# Illinois Department of Financial and Professional Regulation

## Office of the Secretary

**BRUCE RAUNER**
Governor

**BRYAN A. SCHNEIDER**
Secretary

January 17, 2017

## VIA ELECTRONIC SUBMISSION

Hon. Thomas J. Curry
Comptroller of the Currency
Office of the Comptroller of the Currency
400 7th Street SW
Washington, DC 20219
specialpurposecharter@occ.treas.gov

RE:  Exploring Special Purpose National Bank Charters for Fintech Companies

Dear Comptroller Curry:

The Illinois Department of Financial and Professional Regulation (IDFPR) appreciates the opportunity to comment on the above-referenced white paper proposing the granting of special purpose national bank charters by the Office of the Comptroller of the Currency (OCC) to certain fintech companies, including non-depository financial institutions that provide some banking products and services.  IDFPR is the chartering authority for Illinois state-chartered banks and credit unions.  Illinois, with 376 state-chartered commercial and savings banks having $283.7 billion assets under supervision, is the largest state-chartered banking system in the country.  In addition, IDFPR charters and supervises 156 trust fiduciaries holding $9.1 trillion in trust assets.  At 211 state-chartered credit unions with $35.6 billion in assets under supervision Illinois also has a leading state-chartered credit union network.  Finally, IDFPR is the licensing and regulatory authority for the thousands of non-depository financial services providers operating in the State of Illinois, including money transmitters, consumer lenders, check cashers, pawn shops, mortgage brokers and lenders, and other money service businesses.

IDFPR is a proud member of the Conference of State Bank Supervisors (CSBS), and through CSBS we work to ensure nationwide that the state-chartered and state-licensed financial services marketplace operates in a safe and sound manner, consumers are protected from abusive practices, and economic prosperity expands in our states.  We join CSBS's detailed comments on this topic and in their opposition to the proposed creation of a special purpose national bank charter for fintech and other non-depository companies.  We write separately to emphasize certain of the most troublesome aspects of the proposed non-bank chartering regime.

First and foremost we object to the proposed non-depository charter because the OCC lacks the statutory authority to issue such a charter.  The OCC's chartering authority is plainly limited to national banks engaged in deposit-taking and special purpose banks expressly authorized by Congress, namely trust banks, bankers' banks, and credit card banks.  As a result, the proposed chartering of non-depository non-bank entities is unlawful and invalid.

Hon. Thomas J. Curry
January 17, 2017
Page 2

As the financial services industry evolves and technology continues to play an increasing role in all aspects of the financial marketplace, there may indeed be a need for greater federal chartering authority. But if, when, and to what degree such increased federal involvement is appropriate is a decision that Congress alone is empowered to make. IDFPR is committed to working cooperatively with all effected constituencies, including federal and state legislators, federal and state regulators, consumers, and members of industry, to ensure a fair and efficient marketplace that is subject to appropriate – but no more than necessary – regulation. We do, however, object to the implementation of such comprehensive and far-reaching reforms through unilateral, unauthorized agency action.

However, even if the proposed chartering changes were authorized, we believe that they should not be implemented because they will actually stifle the innovation they are presumably designed to enhance. The proposed chartering regime gives the OCC the unchecked ability to decide who gets a new non-bank federal charter and thereby pick winners and losers. The effects of this preferential chartering decision making are exacerbated by the fact that the newly chartered non-banks would be the beneficiaries of an unlevel regulatory playing field in which only such federally chartered entities are exempt from certain otherwise generally applicably federal banking and consumer financial laws. Considering the structural advantage that larger, well-established firms may likely have in seeking a non-bank federal charter, the proposed new regime is likely to favor large incumbent actors to the exclusion of new and often nimble firms that are frequently the source of innovation.

Finally, we object to the broad preemptive effect of state consumer protection laws contemplated by the new federal chartering process. Recent history suggests that such aggressive federal preemption by the OCC can have significant adverse effects. For example, as Senators Brown and Merkley have also observed, research conducted by the University of North Carolina's Center for Community Capital shows that the OCC's assertion of preemption of state anti-predatory lending laws as applied to national banks contributed directly to the concentration of mortgage loans in firms engaged in riskier lending practices, crowding out state banks, and that default risk was greater for these lightly regulated OCC lenders compared to those subject to state laws. It is imprudent for a single federal agency, without clear and explicit congressional authorization, to risk similar results in the growing non-depository marketplace.

In closing, while we object to the currently proposed special purpose charter, IDFPR, together with our sister state agencies, remains committed to working with our federal counterparts to create and maintain an innovative and safe marketplace for financial services.

Very truly yours,

Bryan A. Schneider
Secretary