**NEW YORK STATE**
**DEPARTMENT** *of*
**FINANCIAL SERVICES**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/27/18

Andrew M. Cuomo
Governor

Maria T. Vullo
Superintendent

**By Facsimile (212-805-6382)**

November 26, 2018

The Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:   *Vullo v. Office of the Comptroller of the Currency, et al.*, 18-cv-8377 (VM)

Dear Judge Marrero:

    I am co-counsel for Plaintiff Maria T. Vullo, acting in her capacity as Superintendent of the New York State Department of Financial Services ("Plaintiff" or "the Department"), in the above-captioned action. Pursuant to the Court's Order of November 19, 2018, we respectfully submit this letter in response to the November 16, 2018 Pre-Motion Conference letter (the "November 16 Letter") filed by defendants Joseph Otting, the United States Comptroller, and the Office of Comptroller of the Currency (the "OCC").

    Pursuant to Rule II.B of Your Honor's Individual Rules of Practice, Plaintiff respectfully requests that the Court hold a pre-motion conference to discuss, not only the Defendants' baseless motion to dismiss, but Plaintiff's anticipated motion for a preliminary injunction – a motion that has become necessary due to Defendants' rejection of Plaintiff's reasonable request (made during a meet and confer) that, during the pendency of this action, Defendants halt their high-profile and intensifying efforts to grant special purpose charters to non-depository "fintech" companies. Any such charter is plainly illegal under the National Bank Act ("NBA") and should be enjoined. At the very least, given Defendants' prior representations to the Court in connection with their motion to dismiss on ripeness grounds a prior action filed by Plaintiff, and the harms that would result to New York were Defendants to proceed with their unlawful charter during pendency of this action, a preliminary injunction to preserve the status quo is necessary.

    **Background on OCC's Unlawful Fintech Charter**: On July 31, 2018, the OCC and Comptroller Otting issued a press release announcing that the OCC will "begin accepting applications for national bank charters from non-depository financial technology (fintech) companies engaged in the business of banking." On the same day the OCC published a (i) Policy Statement and (ii) supplement to the Comptroller's Licensing Manual. Both unequivocally state that Defendants have decided to issue federal charters to non-depository fintech companies pursuant to 12 C.F.R. § 5.20(e)(1) (the "Fintech Charter").

    In response, on September 14, 2018, Superintendent Vullo commenced this suit because the OCC's action grossly exceeds the agency's statutory authority. The OCC has declared that national "banks" holding fintech charters will not (and cannot) accept deposits. This determination violates one of the most fundamental premises of federal banking law: since 1863, when Congress enacted the NBA, the operations of federally chartered banks have been

confined solely to the "business of banking." It has been the states, throughout history, that have licensed non-depository companies, fintech or otherwise. The NBA's language, history, and purpose reveal Congress clearly intended for federal chartering purposes that the "business of banking" *necessarily includes deposit taking*. The OCC's decision to issue Fintech Charters does not concern the "business of banking" and stands well outside its jurisdiction to issue.[1]

**Defendants' Proposed Motion to Dismiss**: The OCC seeks to dismiss the Complaint and, as set forth in the November 16 Letter, Plaintiff does not oppose Defendants' filing of a motion to dismiss and consents to the proposed briefing schedule. The OCC's November 16 Letter identifies three purported grounds for dismissal. First, the OCC claims that this action is not ripe and Plaintiff lacks standing because the OCC has "not actually received any such applications [for a fintech charter] let alone granted one." Second, the OCC asserts it possesses statutory authority to charter non-depository institutions. Third, the OCC argues Plaintiff is somehow time barred from challenging any *future* issuance of a special purpose charter pursuant to 12 C.F.R. § 5.20(e)(1).

None of these grounds has merit. First, this action is plainly ripe for judicial determination. After the OCC first took steps in 2016 and 2017 to establish a framework for issuing Fintech Charters to non-depository institutions, Plaintiff commenced a similar action in this Court on May 12, 2017 against the OCC and then-Acting Comptroller Noreika. *Vullo v. Office of the Comptroller of the Currency*, 17-CV-3574 (NRB). Assigned to the Honorable Naomi Reice Buchwald, that action similarly sought a declaratory judgment that the OCC's issuance of a license to a non-depository fintech company was illegal under the NBA. On August 18, 2017, the OCC and then-Acting Comptroller Noreika filed a motion to dismiss the complaint on ripeness and other grounds.

At oral argument on Defendants' motion to dismiss, counsel for Defendants conceded to Judge Buchwald that litigation over the validity of the OCC's Fintech Charter actions *would become ripe at the moment that the OCC decided to go ahead and accept charter applications*—an event that had not yet occurred during the pendency of the 2017 case.[2]

On December 12, 2017, Judge Buchwald granted the Defendants' motion to dismiss without prejudice on the exclusive ground that the 2017 action was not yet ripe. Judge Buchwald determined that: (1) the OCC had not yet decided whether it would accept and potentially grant charter applications from non-depository institutions; (2) the supplement to the OCC's licensing manual for non-depository fintech companies was only in "draft" form; and (3) the then-nominee to become permanent Comptroller, Defendant Joseph Otting, had, as of that point in time, not made any public statement regarding chartering of non-depository institutions. Judge Buchwald declined to rule on the motion's other grounds. *See* Mem. and Order, *Vullo v. OCC*, 17-CV-3574 (NRB), Dkt. No. 30.

Each of these three events has now come to pass. The OCC has decided to accept and act on charter applications from non-depository institutions. The OCC has also finalized the supplement to its licensing manual that provides the specific procedures for chartering non-

---

[1] On October 25, 2018, the Conference of State Banking Supervisors refiled a similar action in the U.S. District Court for the District of Columbia, which also had been dismissed previously solely on ripeness grounds. *See Conference of State Bank Supervisors v. OCC, et al.*, 1:18-cv-2449-DLF (D.D.C.).

[2] Transcript of November 29, 2017 Oral Argument, Dkt. No. 27, at 12:7–20, Cplt. Ex. N.

depository institutions. And Comptroller Otting issued a formal policy statement and press release, and has made multiple public statements, declaring his decision to charter non-depository institutions. (*See* Answer Exs. K, L, & M.) This matter is thus ripe for adjudication.

Importantly, Defendant Otting stated publicly only two weeks ago that the OCC is marching ahead towards granting the first Fintech Charter. Defendant Otting stated that a number of institutions are currently going through the application process, and that the OCC expects to receive its first formal application possibly within the next five weeks. Despite the commencement of this action in September, Defendant Otting stated he is certain that "*we will issue charters independent of [the states'] action.*" Indeed, it appears the OCC has already chosen the first entity that will receive this charter: a company that provides credit products over the internet to consumers and small businesses.[3]

Even viewed in a light most favorable to Defendants, it is brutishly inconsistent for Defendants to proclaim publicly, on the one hand, that an application will be accepted as early as several weeks from now -- and then to assert to this Court, on the other hand, that Plaintiff "continues to lack standing . . . [because] although OCC has determined that it will accept applications for fintech charters, it has not actually received any such applications, let alone granted one." (Defendants' Letter at 2.) Duplicity aside, there now can be no doubt that this matter is especially ripe for judicial decision and that an injunction is warranted to prevent the identified harm from occurring while the underlying claims are determined by this Court.

Second, Defendants' motion fails because, as a matter of law, the OCC utterly lacks the legal authority to issue a special purpose national bank charter to an entity that does not take deposits. No precedent supports Defendants' claim that Congress ever intended, much less expressly authorized, any such seismic shift in the allocation of established regulatory responsibility between state and federal regulators. *E.g., Indep. Bankers Ass'n of America v. Conover*, No. 84-1403-Civ-J-12, 1985 U.S. Dist. LEXIS 22529 (M.D. Fl. Feb. 15, 1985); *National State Bank v. Smith*, No. 76-1479, 1977 U.S. Dist. LEXIS 18184 (D.N.J. Sept. 16, 1977). The business of banking has always been tied to the receipt of deposits, and every time the OCC has sought to regulate non-depository institutions it has received specific authorization from Congress to do so. Congress has not done so here.

Defendants' third ground for dismissal likewise collapses as a matter of law as there are no limitations defenses available to any of the Defendants.

**A Preliminary Injunction Is Necessary in This Case:** The unprecedented issuance of a federal charter to a non-depository institution will be destructive to New York and New Yorkers. As detailed in the Complaint, the issuance of a federal Fintech Charter would preempt all of the state laws that powerfully protect New Yorkers from payday and other high-interest loans and other well-known abuses. The Fintech Charter will immunize non-depository institutions from the strong market conduct regulatory framework enforced by the Department on a daily basis, to the benefit of all New York consumers. Given the OCC's sheer determination to issue a charter in the very near future, and its steadfast rejection of Plaintiff's reasonable request to suspend the OCC's licensing process pending the Court's resolution of this action, a preliminary injunction is warranted and an application by Plaintiff for such relief will be filed in the near future. We respectfully request that the Court also establish a time frame for this application, and we will be available for a pre-motion conference at the Court's convenience.

---

[3] "Fintechs Interested in OCC Charter Despite Lawsuits: Otting," *American Banker* (Nov. 11, 2018).

Respectfully submitted,

*Matthew L. Levine* (signature)

Matthew L. Levine
Executive Deputy Superintendent
for Enforcement
New York State Department of Financial Services
One State Street, New York, NY 10004
Office: (212) 709-5461
Fax: (212) 709-3520
Matthew.levine@dfs.ny.gov

cc   (by e-mail): AUSA Christopher Connolly

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by plaintiff.

SO ORDERED.

11-29-18

VICTOR MARRERO, U.S.D.J.