**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARIA T. VULLO, in her official capacity as Superintendent of the New York State Department of Financial Services,

                Plaintiff,

    v.

OFFICE OF THE COMPTROLLER OF THE CURRENCY and JOSEPH M. OTTING, in his official capacity as U.S. Comptroller of the Currency,

                Defendants.

18 Civ. 8377 (VM)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

 

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2761
Facsimile: (212) 637-2786

CHRISTOPHER CONNOLLY
Assistant United States Attorney
    —Of Counsel—

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

       A.      DFS Lacks Standing and This Matter Is Not Ripe for Judicial Review ..................2

       B.      Any Facial Challenge to Section 5.20(e)(1) Is Untimely .........................................5

       C.      OCC's Interpretation of the National Bank Act Is Entitled to Deference ...............5

       D.      DFS Fails to State a Valid Tenth Amendment Claim..............................................9

CONCLUSION................................................................................................................................10

## TABLE OF AUTHORITIES

**CASES**                                                     **PAGE**

*American Insurance Ass'n v. Clarke*,
    865 F.2d 278 (D.C. Cir. 1988) ............................................................................................. 7

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................................................. 4

*Clarke v. Securities Industry Ass'n*,
    479 U.S. 388 (1987) ............................................................................................................. 8

*Conference of State Bank Supervisors v. Office of the Comptroller of the Currency*,
    313 F. Supp. 3d 285 (D.D.C. 2018) ................................................................................. 3, 4

*Independent Bankers Association of America v. Conover*,
    1985 U.S. Dist. LEXIS 22529 (M.D. Fla. 1985) ................................................................. 8

*Independent Community Bankers Association of South Dakota, Inc. v. Board of Governors of the Federal Reserve System*,
    820 F.2d 428 (D.C. Cir. 1987) ............................................................................................. 6

*Independent Insurance Agents of America, Inc. v. Clarke*,
    955 F.2d 731 (D.C. Cir. 1992) ............................................................................................. 7

*Independent Insurance Agents v. Ludwig*,
    997 F.2d 958 (D.C. Cir. 1993) ......................................................................................... 7, 8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................................. 2

*N.Y. Civil Liberties Union v. Grandeau*,
    28 F.3d 122 (2d Cir. 2008) .................................................................................................. 2

*NationsBank of N.C., N.A. v. Variable Annuity Life Insurance Co.*,
    513 U.S. 251 (1995) ............................................................................................................. 6

*Nat'l Ass'n of Life Underwriters v. Clarke*,
    776 F. Supp. 1162 (D.D.C. 1990) ....................................................................................... 7

*Nat'l Org. for Marriage, Inc. v. Walsh*,
    714 F.3d 682 (2d Cir. 2013) ................................................................................................ 2

*Nat'l State Bank of Elizabeth, N.J. v. Smith*,
    591 F.2d 223 (3d Cir. 1979) ................................................................................................ 9

*Nat'l State Bank of Elizabeth, N.J. v. Smith*,
    1977 U.S. Dist. LEXIS 18184 (D.N.J. Spet. 16, 1977) ....................................................... 9

*Tancredi v. Metropolitan Life Insurance Co.*,
    378 F.3d 220 (2d Cir. 2004) ................................................................................................... 2

*Vullo v. Office of the Comptroller of the Currency*,
    No. 17 Civ. 3574 (NRB), 2017 WL 6512245 (S.D.N.Y. Dec. 12, 2017) ........................ 3, 4

*Watters v. Wachovia Bank, N. A.*,
    550 U.S. 1 (2007) ................................................................................................................... 9

**STATUTES**

12 U.S.C. § 21 ................................................................................................................................ 6

12 U.S.C. § 24 ................................................................................................................................ 6

12 U.S.C. § 26 ................................................................................................................................ 6

12 U.S.C. § 27 ............................................................................................................................ 5, 6

12 U.S.C. § 36 ................................................................................................................................ 8

12 U.S.C. § 81 ................................................................................................................................ 8

12 U.S.C. § 222 .............................................................................................................................. 7

12 U.S.C. § 1815 ............................................................................................................................ 7

**RULES AND REGULATIONS**

Fed. R. Civ. P. 12(b)(1) ................................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 1

12 C.F.R. § 5.20(e)(1) ............................................................................................................ 1, 2, 8

**PRELIMINARY STATEMENT**

Defendants the Office of the Comptroller of the Currency and Joseph M. Otting, in his official capacity as Comptroller of the Currency (together, "defendants" or "OCC"), by their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submit this reply memorandum of law in further support of their motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

DFS's challenge to OCC's authority under 12 C.F.R. § 5.20(e)(1) to issue charters to non-depository financial technology (or "fintech") companies remains premature. As was the case when Judge Buchwald issued her decision in *Vullo I*, DFS has not suffered an injury-in-fact, and therefore cannot establish standing, because all of the harms DFS articulates are speculative. Those purported harms are premised on OCC's issuance of a § 5.20(e)(1) charter to a fintech that does business in New York, but OCC has not even received an application for such a charter, let alone approved one. DFS relies almost exclusively on Judge Buchwald's belief that it would have standing once OCC decided to accept applications for § 5.20(e)(1) charters from fintechs, but that dicta is not binding on this Court and does not take into account the subsequent standing analysis in *CSBS I*. Likewise, and for much the same reasons, this matter remains unripe for adjudication.

Even if the Court were to reach the merits of OCC's authority to issue charters to non-depository fintech companies, the complaint fails to state a claim on which relief may be granted. Section 5.20(e)(1) represents a reasonable interpretation of OCC's statutory authority under the National Bank Act, and is therefore entitled to deference. DFS's attempts to distinguish cases deferring to OCC's interpretation of the term "business of banking" are unpersuasive, as is its claim that the National Bank Act must be interpreted in light of later-enacted statutes. Finally, DFS's Tenth Amendment claim lacks merit, because the issuance of § 5.20(e)(1) charters would

comport with the Supremacy Clause. Accordingly, the complaint should be dismissed in its entirety.

## ARGUMENT

**A.     DFS Lacks Standing and This Matter Is Not Ripe for Judicial Review**

As explained in OCC's opening brief (ECF No. 21) ("Gov't Br."), DFS lacks standing because it has not suffered an injury-in-fact. *See* Gov't Br. 7-9. All of the alleged harms that DFS asserts are predicated on OCC issuing a § 5.20(e)(1) charter to a non-depository fintech company that does business in New York. *See* Compl. ¶ 3. But to date, OCC has not even received an application for such a charter, let alone granted one. *See* Lybarger Decl. ¶¶ 7-8. DFS's anticipated injuries are thus merely speculative, and insufficient to establish standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Further, and for essentially the same reasons, this matter is not ripe for judicial review. *See* Gov't Br. 9-10; *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (constitutional ripeness inquiry conterminous with injury-in-fact inquiry); *N.Y. Civil Liberties Union v. Grandeau*, 28 F.3d 122, 132 (2d Cir. 2008) (prudential ripeness analysis turns, in part, on "whether the issues sought to be adjudicated are contingent on future events that may never occur").

DFS's reliance on Judge Buchwald's decision in *Vullo I* to argue otherwise is misplaced. *See* Pl. Opp. 4-7. At the threshold, "[i]t is inarguable that a court always has jurisdiction to determine its own jurisdiction." *Tancredi v. Metropolitan Life Insurance Co.*, 378 F.3d 220, 225 (2d Cir. 2004). Accordingly, this Court is not bound by *Vullo I*'s reasoning. That is particularly true because, contrary to DFS's claim, Judge Buchwald did not "previously rule[ ]" on when DFS would have standing. Pl. Opp. (ECF No. 25) 6. Judge Buchwald's ruling extended only as far as the issue before the court in *Vullo I*: because OCC had not yet decided whether it would issue §

2

5.20(e)(1) charters to fintech companies, DFS lacked standing and the matter was not ripe. *See Vullo v. Office of the Comptroller of the Currency ("Vullo I")*, No. 17 Civ. 3574 (NRB), 2017 WL 6512245, at *7-*9 (S.D.N.Y. Dec. 12, 2017).  The court's speculation that a decision by OCC to accept applications for such charters would confer standing on DFS was not integral to that holding, and is therefore dicta that this Court need not follow.  Indeed, elsewhere in her opinion, Judge Buchwald recognized that "none of [DFS's] alleged injuries will actually occur if the OCC never issues a SPNB charter to a fintech company." *Id.* at *7.  Put simply, *Vullo I* did not resolve the jurisdictional issue before this Court.

Moreover, *Vullo I* predates, and therefore does not account for, the detailed and convincing analysis of standing that the District of Columbia district court undertook in *CSBS I*.  There, as in *Vullo I*, the district court recognized that "each of [CSBS's alleged] harms is contingent on whether the OCC charters a Fintech," and it further observed that:

> Several contingent and speculative events must occur before the OCC charters a Fintech: (1) the OCC must decide to finalize a procedure for handling those applications; (2) a Fintech company must choose to apply for a charter; (3) the particular Fintech must substantively satisfy regulatory requirements; and (4) the OCC must decide to grant the charter to the particular Fintech.

*Conference of State Bank Supervisors v. Office of the Comptroller of the Currency ("CSBS I")*, 313 F. Supp. 3d 285, 296 (D.D.C. 2018).  Because "not even the first step . . . had occurred," CSBS lacked standing. *Id.*

Now, *only* the first step has occurred: OCC has finalized a procedure for handling § 5.20(e)(1) charter applications. *See* Gov't Br. 4-5.  But that still falls far short of the requirements for standing under the *CSBS I* test.  Not even the second requirement is met, because no fintech has applied for a charter. *See* Lybarger Decl. ¶¶ 7-8.  Thus, to reach the merits of this case at this time would "require the Court to imagine the 'unimaginably wide' range of possible Fintechs, and

3

to draw distinctions between them." *CSBS I*, 313 F. Supp. 3d at 300.  That is precisely why "[t]his dispute will be sharpened if the OCC charters a particular Fintech—or decides to do so imminently." *Id.*  Because it has not done so, DFS cannot demonstrate a "concrete" or "actual or imminent" injury-in-fact.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Or, as the *CSBS I* court put it, "[w]hile a court could readily consider the legality of awarding a charter to a particular Fintech, the current dispute does not present that question." *CSBS I*, 313 F. Supp. 3d at 300.

Once DFS's reliance on *Vullo I*'s dicta is set aside, its standing and ripeness arguments rest on contentions that were rejected in the prior litigation over § 5.20(e)(1) charters, and that are no more persuasive now.  For example, DFS asserts standing based on its claim that "federal regulatory action that preempts state law sufficiently invades state sovereignty to afford standing." Pl. Opp. 5 (quotation marks omitted).  But DFS "cannot point to any regulatory action already taken by the OCC that preempts state law.  Any allegation of preemption at this point relies on speculation about the OCC's future actions." *Vullo I*, 2017 WL 6512245, at *8; *accord CSBS I*, 313 F. Supp. 3d at 298 (CSBS's preemption argument would be persuasive only "*if* the OCC were to charter a Fintech" (emphasis in original)).  Likewise, with respect to ripeness, DFS argues that "this case presents pure legal questions eminently fit for judicial review."  Pl. Opp. 7.  But that factor "is not dispositive," *Vullo I*, 2017 WL 6512245, at *9—particularly where, as here, the plaintiff's claims rest on future actions whose contours are uncertain and which might not occur, *see CSBS I*, 313 F. Supp. 3d at 300.  Because DFS lacks standing, and the matter is not ripe for review, the complaint should be dismissed for lack of subject-matter jurisdiction.

### B.     Any Facial Challenge to Section 5.20(e)(1) Is Untimely

Moreover, insofar as DFS is asserting a facial challenge to § 5.20(e)(1), the Court lacks jurisdiction because the statutory deadline for such a challenge is long passed. *See* Gov't Br. 10-11.  DFS's response to that unremarkable proposition misapprehends the nature of OCC's argument.  DFS alleges that OCC is being "duplicitous" by "successfully argu[ing] to Judge Buchwald that this action was not yet ripe and then argu[ing] to this Court a year later that . . . the six-year statute of limitations for this case has expired." Pl. Opp. 8.  OCC is doing no such thing— its point is not that DFS's challenge to the issuance of a non-depository fintech charter would be untimely (that challenge is, in fact, premature), but rather that a *facial* challenge to the agency's promulgation of § 5.20(e)(1) would be untimely.  None of DFS's arguments in its opposition brief address this point.  And there is nothing "duplicitous" about OCC's argument: indeed, as DFS is well-aware, OCC made precisely the same argument about a facial challenge to § 5.20(e)(1) to Judge Buchwald, while at the same time successfully arguing that DFS's prior action was not ripe. *See* No. 17 Civ. 3754, ECF No. 19 (OCC's motion to dismiss in *Vullo I*).

### C.     OCC's Interpretation of the National Bank Act Is Entitled to Deference

Even if the Court were to find that DFS has standing or that this matter is ripe for review, OCC's interpretation of the term "business of banking" in the National Bank Act is reasonable and entitled to *Chevron* deference. *See* Gov't Br. 11-19.

In challenging OCC's reasonable interpretation of ambiguous statutory language, DFS first misapprehends the source of OCC's chartering authority.  That authority derives from 12 U.S.C. § 27(a), which provides that OCC may grant a charter "[i]f . . . it appears that such association is lawfully entitled to commence the business of banking."  Although the term "business of banking" appears elsewhere in the National Bank Act, it is not defined. *See* Gov't Br. 12 (citing relevant

5

provisions). DFS's suggestion that OCC's chartering authority resides in 12 U.S.C. § 24(Seventh), and further that that provision defines deposit-taking as integral to the "business of banking," is incorrect. *See* Pl. Opp. 9.  Section 24(Seventh), entitled "Corporate powers of associations," defines bank powers—it is not the source of OCC's chartering authority—and, in any event, while that provision identifies "receiving deposits" as a banking function, its language does not unambiguously render deposit-taking an essential component of the business of banking.

DFS's attempt to limit the Supreme Court's decision in *NationsBank of N.C., N.A. v. Variable Annuity Life Insurance Co.*, 513 U.S. 251, 257 (1995), to the facts of that case is likewise unavailing. *See* Pl. Opp. 9-10.  Although *NationsBank* addressed the permissible limits of the term "business of banking" "beyond those specifically enumerated," 513 U.S. at 258 n.2, that context had no bearing on the Court's granting deference to the Comptroller in interpreting this ambiguous term.  DFS's attempt to distinguish *Independent Community Bankers Association of South Dakota, Inc. v. Board of Governors of the Federal Reserve System*, 820 F.2d 428 (D.C. Cir. 1987), also fails.  Contrary to DFS's arguments, *see* Pl. Opp. 24, the D.C. Circuit placed no weight on the fact, mentioned in passing, that the national bank intended to offer limited deposit-taking and other services to the "local community" as minimally permitted by a state statute.[1]

DFS also errs in relying on "the overall scheme of federal banking law" in an attempt to cast doubt on OCC's reasonable interpretation. *See* Pl. Opp. 14-17.  Because the National Bank Act predates every other federal banking statute, DFS's theory, if adopted, would demand reconsideration of existing interpretations of the National Bank Act upon subsequent passage or

---

[1] DFS offers no support for its assertion that the chartering provisions of the National Bank Act should be interpreted with reference to New York statutory developments. *See* Pl. Opp. 13-14.  Regardless of any essential nature of deposit-taking under the New York Banking Law, Congress enacted no similar requirement as part of the National Bank Act. *See* 12 U.S.C. §§ 21, 26, 27.

amendment of other banking statutes.  This is clearly untenable.  In *Independent Insurance Agents v. Ludwig*, 997 F.2d 958, 962 (D.C. Cir. 1993), the D.C. Circuit rejected similar arguments that the OCC's interpretation of Section 92 of the National Bank Act must be harmonized with a later-enacted provision of the Bank Holding Company Act ("BHCA").  Notwithstanding that Congress had intended that the BHCA amendment "parallel" Section 92, the D.C. Circuit deferred to an OCC Section 92 interpretation that was directly contrary to the Federal Reserve Board staff's interpretation of the "parallel" BHCA provision.  *Id.*  The D.C. Circuit rejected the notion that the 1982 BHCA amendment, as interpreted by the Federal Reserve Board, should "illuminate" the intention of the 1916 Congress.  *Id.*  The court of appeals cited approvingly the conclusion of the district court that "[t]he two provisions were enacted over sixty-five years apart and deal with two different types of banking institutions, each subject to a distinct set of laws and regulations administered by separate agencies."  *Id.* (quoting *Nat'l Ass'n of Life Underwriters v. Clarke,* 776 F. Supp. 1162, 1171 (D.D.C. 1990), *rev'd on other grounds by Independent Insurance Agents of America, Inc. v. Clarke*, 955 F.2d 731, 732 (D.C. Cir. 1992)).  The court also cited to an earlier case where it had rejected an argument that the OCC was obligated to follow the BHCA.  "[T]he Comptroller derived his authority solely under the [National Bank Act], and it was his responsibility to determine issues under that Act, not under the BHCA."  *Id.* (citing *American Insurance Ass'n v. Clarke*, 865 F.2d 278 (D.C. Cir. 1988)).

DFS's arguments premised on the Federal Reserve Act and Federal Deposit Insurance Act fare no better.  *See* Pl. Opp. 15-16.  Significantly, the statutory language on which DFS relies is silent on the issue of chartering authority.  *See id.* at 15 (citing 12 U.S.C. §§ 222, 1815(a)(1)).  At best, these provisions indicate that a national bank must apply for deposit insurance should it decide to accept deposits other than trust funds—but that fact alone is insufficient to render the

term "business of banking" in the National Bank Act unambiguous. Put another way, these statutes do not foreclose OCC's interpretation of the wholly separate statute it is tasked with administering. *See Independent Insurance Agents*, 997 F.2d at 962 (OCC's responsibility is to determine issues under the National Bank Act, not other statutes).

OCC has reasonably interpreted the term "business of banking" to mean that the conduct of one of three "core activities" suffices to make an applicant eligible for a national bank charter. That interpretation is grounded in relevant statutes and has been endorsed by case law. In *Clarke v. Securities Industry Ass'n*, 479 U.S. 388 (1987), the Supreme Court deferred to OCC's interpretation of the ambiguous term "the general business of each national banking association" in the locational restrictions contained in 12 U.S.C. § 81 to mean only "core banking functions," and to define those core banking functions by reference to the definition of a "branch" contained in 12 U.S.C. § 36—"a place at which deposits are received, or checks paid, or money lent." 479 U.S. at 409. In promulgating Section 5.20(e)(1), OCC reasonably consulted the same source, Section 36, to inform its determination of the minimum "core activities" that satisfy "the business of banking" for chartering purposes. *See* Gov't Br. 17-19. Section 5.20(e)(1) is consistent with that interpretation: "A special purpose bank that conducts activities other than fiduciary activities must conduct at least one of the following three core banking functions: receiving deposits; paying checks; or lending money." 12 C.F.R. § 5.20(e)(1).

Finally, DFS's claim that similar OCC chartering efforts "have routinely been struck down by the courts" is unpersuasive, because the cases on which it relies simply cannot bear the weight of DFS's argument. *See* Pl. Opp. 22-24. The first case, *Independent Bankers Association of America v. Conover*, 1985 U.S. Dist. LEXIS 22529 (M.D. Fla. 1985), is not binding on this Court, was vacated before final judgment was entered, and both predates and is at odds with the reasoning

8

of the Supreme Court in *NationsBank* and the D.C. Circuit in *Independent Community Bankers Association*. And the second case, *National State Bank of Elizabeth, N.J. v. Smith*, 1977 U.S. Dist. LEXIS 18184 (D.N.J. Sept. 16, 1977), was vacated based on the intermediate amendment to Section 27(a), which "validate[d] retroactively as well as prospectively" OCC's chartering of national trust banks. *See Nat'l State Bank of Elizabeth, N.J. v. Smith*, 591 F.2d 223, 231-32 (3d Cir. 1979). The Third Circuit therefore never addressed the validity of the district court's pre-amendment determination that OCC lacked authority to charter an institution that did not engage in *any* of the banking powers enumerated in Section 24(Seventh). Accordingly, and contrary to DFS's claims, *National State Bank* does not stand for the proposition that deposit-taking is a prerequisite to receiving an OCC charter.

**D.     DFS Fails to State a Valid Tenth Amendment Claim**

Finally, DFS fails to state a Tenth Amendment claim. *See* Gov't Br. 19. Its Tenth Amendment argument is derivative of its argument that OCC is acting outside the scope of its federal authority in a way that encroaches on authority reserved to the states. *See* Pl. Opp. 24-25. If, as DFS argues, OCC were attempting not to charter a national bank but to supersede traditional state bank corporate chartering authority, that claim might be plausible. But because OCC's plan for issuing § 5.20(e)(1) charters envisions a federal charter co-existing with state-chartered institutions, the agency is acting within the authority of the Commerce Clause and the Necessary and Proper Clause. *See, e.g., Watters v. Wachovia Bank, N. A.*, 550 U.S. 1, 22 (2007).

## **CONCLUSION**

For the foregoing reasons, and those set forth in OCC's opening brief, the complaint should be dismissed.

Date: New York, New York
March 26, 2019

    Respectfully submitted,

    GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York
    *Attorney for Defendants*

By: /s/ Christopher Connolly
    CHRISTOPHER CONNOLLY
    Assistant United States Attorney
    86 Chambers Street, 3rd Floor
    New York, New York 10007
    Tel.: (212) 637-2761
    Fax: (212) 637-2786
    christopher.connolly@usdoj.gov