

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL



LETITIA JAMES
ATTORNEY GENERAL

BARBARA D. UNDERWOOD
SOLICITOR GENERAL
DIVISION OF APPEALS & OPINIONS

October 7, 2019

**BY FAX**
Honorable Victor Marrero
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *Lacewell v. Office of the Comptroller of the Currency*, 18 Civ. 8377 (VM)

Dear Judge Marrero:

This Office represents plaintiff Linda A. Lacewell, the New York State Superintendent of Financial Services. I write in response to this Court's September 27, 2019, order directing the parties to submit their respective views on the appropriate content of a final judgment.

As noted in the parties' joint letter dated September 26, 2019, the parties are in agreement that the Court's May 2, 2019, order denying defendants' motion to dismiss resolves the substantive legal issues in this matter and renders the entry of final judgment appropriate. The parties have also agreed on all but one provision of the proposed final judgment. Attached to this letter is a draft that contains the language the parties have agreed upon.

The parties' dispute concerns ¶ 2 of this proposed final judgment, which states: "OCC's regulation, 5 C.F.R. § 5.20(e)(1)(i), is set aside with respect to all fintech applicants seeking a national bank charter that do not accept deposits." Defendants wish to append to this provision additional language that would limit the judgment's effect to fintech applicants with a nexus to New York State. This Court should decline to add that additional language.

As this Court held in its May 2, 2019 order, the Office of the Comptroller of the Currency (OCC) exceeded its statutory authority under the National Banking Act (NBA) by offering to issue national bank charters to non-depository fintech institutions. Decision and Order 38, 53, ECF No. 28. Defendants have acknowledged that "the Court ruled on the issue of law at the heart of this case." Endorsed Letter (May 15, 2019), ECF No. 29.

28 LIBERTY STREET, NEW YORK, NY 10005-1400 • PHONE (212) 416-8020 • FAX (212) 416-8962 *NOT FOR SERVICE OF PAPERS
WWW.AG.NY.GOV

Under the express terms of the Administrative Procedure Act (APA), the proper remedy when, as here, an agency has acted "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations" is to "set aside [the] agency action." 5 U.S.C. § 706(2)(A), (C). Courts have routinely rejected the federal government's attempts to impose geographic limitations on this express statutory remedy, holding that "because the statutory remedy is directed at the entire 'final agency action' that the APA subjects to judicial review, the 'normal remedy' is to set aside the agency action wholesale, not merely as it applies to the particular plaintiff or plaintiffs who brought the agency action before the court." *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 672 (S.D.N.Y.) (emphasis omitted), *aff'd in relevant part*, 139 S. Ct. 2551 (2019); *see also National Mining Ass'n v. U.S. Army Corps. of Engrs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) ("'the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed'" (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989))); *see also Guertin v. United States*, 743 F.3d 382, 388 (2d Cir. 2014) (stating the "usual" rule that agency action held illegal under the ACA must be vacated).

To the extent that defendants seek to support a geographic limitation here by importing arguments drawn from the ongoing debate over nationwide injunctions, those arguments would be inapposite. "That debate is not implicated . . . where the Court is vacating an agency action pursuant to the APA, as opposed to enjoining it as a violation of the Constitution or other applicable law." *National Ass'n for the Advancement of Colored People v. Trump*, 315 F. Supp. 3d 457, 474 n.13 (D.D.C. 2018). Vacatur under the APA is a statutory remedy expressly authorized by Congress; it thus does not implicate the same concerns raised by a court's exercise of its powers under equity, such as in issuing an injunction. *See American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001) (distinguishing between vacatur under the APA and injunctive relief).

Indeed, the Supreme Court has recognized that setting aside agency action under the APA is not only a distinct remedy from an injunction, but also "a *less drastic* remedy" than the "extraordinary relief of an injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010) (emphasis added). When a court grants an injunction, it runs the risk that it will "foreclose even the possibility" of a partial course correction by the agency, which must take care not to violate a continuing judicial order. *Id.* at 165. By contrast, the standard APA remedy of vacatur does not place the agency under any ongoing order or court supervision; once the court sets aside the agency action as unlawful, "the court's inquiry is at an end." *Palisades Gen. Hosp., Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005). The considerations that the federal government has raised against nationwide injunctions thus are not presented when a court is asked simply to set aside final agency action under the APA.

Plaintiff also has substantial concerns about the administrability and enforceability of any geographic limitation in this case. *Cf. Make the Road N.Y. v. McAleenan*, No. 19-cv-2369 (KBJ), 2019 WL 4738070, at *47 (D.D.C. Sept. 27, 2019) (in an APA case, describing "the obvious practical problems that partial invalidation of agency rules . . . would pose"). This Court would likely have to resolve disputes between the parties about the precise language to

2

include—and to engage in ongoing supervision of defendants' and third parties' compliance with that language. For example, the parties have not yet agreed on the test that would establish a fintech company's geographic nexus with New York. And if OCC were to begin issuing national bank charters to fintech companies that do not *currently* have a New York nexus, serious questions will arise about whether and how those non-parties will be bound by any final judgment here if they *later* develop a New York nexus. Ultimately, OCC charters are not limited in geographic scope, and thus, any limitation at the time of licensure is meaningless.

These difficulties will be entirely avoided if this Court applies the plain language of the APA and simply vacates OCC's final agency action here. We respectfully ask the Court to issue the attached proposed judgment as the judgment of the Court.

Respectfully submitted,

Matthew W. Grieco
Assistant Solicitor General

enc. (proposed judgment)

cc. Christopher Connolly, U.S. Attorney's Office

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Plaintiff.

SO ORDERED.

10-8-19
DATE           VICTOR MARRERO, U.S.D.J.

3

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA A. LACEWELL, in her official capacity as Acting Superintendent of the New York State Department of Financial Services,<br><br>Plaintiff,<br>v.<br><br>OFFICE OF THE COMPTROLLER OF THE CURRENCY and JOSEPH M. OTTING, in his official capacity as U.S. Comptroller of the Currency,<br><br>Defendants. | 18-cv-8377<br><br>Hon. Victor Marrero |

### [Plaintiff's Proposed] FINAL JUDGMENT

WHEREAS, on September 14, 2018, plaintiff the Superintendent of the New York State Department of Financial Services ("DFS")[1] commenced this action against defendants the Office of the Comptroller of the Currency and Comptroller Joseph M. Otting (together, "OCC"), challenging OCC's decision to accept applications for special-purpose national bank charters from financial technology (or "fintech") companies, including fintech companies that do not accept deposits;

WHEREAS, on February 26, 2019, OCC moved to dismiss DFS's Complaint (ECF Nos. 20-22); on March 19, 2019, DFS opposed the motion to dismiss (ECF No. 25); and on March 26, 2019, OCC filed a reply brief in support of its motion (ECF No. 26);

---

[1] On May 31, 2019, in accordance with Federal Rule of Civil Procedure 25(d), Superintendent of DFS Linda A. Lacewell was substituted as the plaintiff in this matter. (ECF No. 31).

1

WHEREAS, in a decision and order dated May 2, 2019 (ECF No. 28), this Court denied OCC's motion to dismiss in part, holding that the National Bank Act's "'business of banking' clause, read in the light of its plain language, history, and legislative context, unambiguously requires that, absent a statutory provision to the contrary, only depository institutions are eligible to receive national bank charters from OCC";

WHEREAS, the parties have conferred and agree that the Court's May 2, 2019, order resolves the substantive legal issues in this matter and renders the entry of final judgment appropriate; and

WHEREAS, notwithstanding its agreement that entry of final judgment is appropriate at this time, OCC expressly reserves its appellate rights in this matter;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. For the reasons set forth in the Court's May 2, 2019, order, the Clerk of the Court is directed to enter final judgment in favor of plaintiff DFS, and to close this case;

2. OCC's regulation, 5 C.F.R. § 5.20(e)(1)(i), is set aside with respect to all fintech applicants seeking a national bank charter that do not accept deposits;

3. Each party shall bear its own fees and costs in this action.

Dated: New York, New York
_____, 2019

SO ORDERED.

_____
HON. VICTOR MARRERO
United States District Judge

2