

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street, Third Floor*
*New York, New York 10007*

October 7, 2019

<u>By Facsimile (212) 805-6382</u>
The Honorable Victor Marrero
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE ............ 10/21/19
```

    Re:   *Lacewell v. Office of the Comptroller of the Currency*, 18 Civ. 8377 (VM)

Dear Judge Marrero:

    This Office represents defendants the Office of the Comptroller of the Currency and Comptroller Joseph M. Otting (together, "OCC") in the above-referenced matter. We write respectfully to request that the Court enter the attached proposed final judgment. Consistent with this Court's authority under Article III of the Constitution and traditional equitable principles, the proposed judgment limits the geographic scope of the relief afforded to plaintiff the Superintendent of the New York State Department of Financial Services ("DFS") to New York State.

    This case concerns DFS's challenge to OCC's decision to accept applications for special purpose national bank charters from financial technology (or "fintech") companies that do not accept deposits. *See* Compl. (ECF No. 1) ¶¶ 1-2. OCC proposed to accept and consider such applications pursuant to 12 C.F.R. § 5.20(e)(1), the regulation that authorizes the chartering of special purpose national banks. *See id.* ¶¶ 24-25. In its decision and order dated May 2, 2019 (ECF No. 28 ("Order")), the Court granted in part and denied in part OCC's motion to dismiss the complaint. Among other things, the Court held that the National Bank Act's "'business of banking' clause, read in the light of its plain language, history, and legislative context, unambiguously requires that, absent a statutory provision to the contrary, only depository institutions are eligible to receive national bank charters from OCC." Order 53.

    The parties agree that the Court's order renders the entry of final judgment appropriate. The parties also agree on the majority of the language in the proposed final judgment. But they disagree about the language of Paragraph 2, which concerns the judgment's scope. As reflected in the attached proposed judgment, and for the reasons set forth below, the Court should limit its judgment to setting aside § 5.20(e)(1) for "all fintech applicants seeking a national bank charter that do not accept deposits, and that have a nexus to New York State, *i.e.*, applicants that are

chartered in New York or that intend to do business in New York (including through the Internet) in a manner that would subject them to regulation by DFS."

This limitation on the scope of the Court's judgment is proper for several reasons. At the threshold, Article III of the Constitution precludes the granting of relief that extends beyond what is necessary to redress a plaintiff's alleged injury. To establish Article III standing, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (quotation marks omitted). "[S]tanding is not dispensed in gross: A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) (quotation marks omitted). Accordingly, a court's power under Article III "exists only to redress or otherwise to protect against injury to the complaining party," *Warth v. Seldin*, 422 U.S. 490, 499 (1975), and the remedies a court orders "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

The allegations in the complaint demonstrate that DFS's alleged injuries, and thus any remedies to which it is entitled, are limited to New York State. "DFS is the New York governmental agency statutorily charged with the 'enforcement of the [state's] insurance, banking and financial services laws.'" Compl. ¶ 16 (quoting N.Y. Fin. Serv. L. § 102). Consequently, all of the harms it alleges in its complaint are tethered to its geographically-limited regulatory authority. For example, DFS alleges that, if OCC were to issue charters to non-depository fintech companies, "*New York-licensed* money transmitters using technologically innovative operating platforms could . . . escape *New York's* regulatory requirements." *Id.* ¶ 45 (emphasis added). Likewise, DFS asserts that OCC's chartering proposal "effectively negates *New York's* strict interest-rate caps and anti-usury laws," thereby allowing fintech companies to "gouge *New York* borrowers." *Id.* ¶ 46 (emphasis added). DFS further claims that OCC's issuance of charters would adversely affect DFS's own operating expenses by removing chartered fintech companies from the ambit of the assessments levied on financial institutions licensed in New York State. *Id.* ¶¶ 50-51. At bottom, all of DFS's alleged harms stem from its bedrock assertion that "OCC's actions pose an insidious threat to the health of *New York's* regulatory environment that seeks to protect *New York's* markets and consumers." *Id.* ¶ 51 (emphasis added).

This Court's analysis of DFS's Article III standing likewise recognized the limited geographic scope of DFS's alleged injuries. The Court observed that "DFS has repeatedly couched its concerns about the Fintech Charter Decision in terms of the dual banking system"—*i.e.*, on the interplay between federal and state banking regulators—and specifically identified alleged harms to "New York citizens" and DFS itself as the basis for DFS's standing claims. Order 22-23. In concluding that DFS possessed Article III standing, the Court asserted that "[t]he threats to *New York's* sovereignty are . . . clear." *Id.* at 24 (emphasis added).

DFS has therefore only "allege[d] personal injury" from OCC's chartering decision with respect to that decision's potential impact on New York. *Cuno*, 547 U.S. at 342. It has not asserted, and cannot assert, any "concrete and particularized" "injury in fact" arising from the chartering of a non-depository fintech company that lacks a nexus to New York State. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For example, DFS would not be harmed if OCC were to charter a non-depository fintech company that is licensed in Hawaii, and that

2

intends to do business only in Hawaii and would not offer its services (through the Internet or otherwise) in New York. Put simply, DFS does not have Article III standing to challenge charters that have no nexus to New York. Consequently, because this Court may only provide remedies that are "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Califano*, 442 U.S. at 702, Article III requires that the judgment be limited to New York State.

The foregoing Article III analysis parallels traditional equitable principles, which likewise establish that remedies should not extend beyond what is necessary to redress the plaintiff's alleged injuries. *See, e.g., Madsen v. Women's Health Ctr., Inc.,* 512 U.S. 753, 765 (1994); *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011) (holding an agency's regulation facially invalid, but vacating the district court's injunction insofar as it barred the agency from enforcing the regulation against entities other than the plaintiff); *Virginia Society for Human Life, Inc. v. Federal Election Commission*, 263 F.3d 379, 393 (4th Cir. 2001) (vacating nationwide injunction and holding that "[p]reventing the [agency] from enforcing [the challenged regulation] against other parties in other circuits does not provide any additional relief to [the plaintiff]"), *overruled in part on other grounds by The Real Truth About Abortion, Inc. v. Federal Election Commission*, 681 F.3d 544 (4th Cir. 2012). Indeed, this understanding of the scope of a court's authority is deeply rooted in historical practice. *See, e.g., Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999) (court's authority to enter injunctive relief is circumscribed by the type of relief "traditionally accorded by courts of equity"); *Trump v. Hawaii*, 138 S. Ct. 2392, 2427-28 (2018) (Thomas, J., concurring) (tradition of equity inherited from English law was premised on "providing equitable relief only to parties" because the fundamental role of a court was to "adjudicate the rights of individual[s]" before it (quotation marks omitted)).

That DFS's claims arise under the Administrative Procedure Act ("APA") does not alter the traditional equitable limitations on the scope of relief. The APA states that in the absence of a special statutory review provision, the proper "form of proceeding" under the APA is a traditional suit for declaratory or injunctive relief. *See* 5 U.S.C. § 703. Declaratory and injunctive remedies are equitable in nature. *See, e.g., Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Accordingly, as discussed above, the remedy afforded to DFS should not extend beyond what is necessary to redress its alleged harms. *Madsen*, 512 U.S. at 765. Further, while the APA provides that unlawful, arbitrary, or capricious agency action may be "set aside," 5 U.S.C. § 706(2), nothing in that provision dictates the scope of that remedy, geographically or otherwise, *cf. Trump*, 138 S. Ct. at 2425 (Thomas, J., concurring) ("No statute expressly grants district courts the power to issue universal injunctions."). Indeed, courts regularly vacate agency actions only in part, tailoring the remedy to match the agency's error. *See, e.g., Today's IV, Inc. v. Fed. Transit Admin.*, 2014 WL 5313943, at *18 (C.D. Cal. Sept. 12, 2014) (vacating agency action in part because "[t]he deficiency . . . was limited"). That approach is particularly appropriate here because, as this Court recognized, the "agency action" that DFS challenges is the *application* of § 5.20(e)(1) in a manner that will allegedly harm DFS—not the regulation on its face. *See* Order 6 n.5 (construing DFS's claims "not as a facial challenge to Section 5.20(e)(1) in its entirety, but as a challenge only to so much of the Regulation as purports to authorize OCC to issue SPNB charters to non-depository institutions"). Thus, the final agency action that is the proper object of judicial review—and the proper object of the Court's relief—must be "some concrete action applying the regulation to the claimant's situation that harms or

3

threatens to harm him." *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 891 (1990). The concrete action applying § 5.20(e)(1) in a manner that harms DFS could only be OCC's granting of a charter to a non-depository fintech company with a nexus to New York State. Accordingly, prohibiting that action should be the extent of the Court's relief.

OCC's proposed geographic limitation on the scope of the judgment is also necessary to preserve the ability of other courts to consider this same legal issue. The Supreme Court has explicitly affirmed the importance of allowing for multiple lower court opinions, particularly where the government is involved: "[g]overnment litigation frequently involves legal questions of substantial public importance," and allowing one court to issue a definitive ruling against the government in such cases "would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *United States v. Mendoza*, 464 U.S. 154, 160 (1984); *see also Arizona v. Evans*, 514 U.S. 1, 23 n.1 (1995) (Ginsburg, J., dissenting) ("We have in many instances recognized that when frontier legal problems are presented, periods of 'percolation' in, and diverse opinions from, state and federal appellate courts may yield a better informed and more enduring final pronouncement by this Court."); *Virginia Society for Human Life*, 263 F.3d at 394 (rejecting nationwide injunction because it "preclud[ed] other circuits from ruling"). Indeed, in cases involving the government, a judgment that extends beyond a plaintiff's alleged injuries to cover all potential plaintiffs nationwide would undermine the Supreme Court's instruction "that nonmutual offensive collateral estoppel simply does not apply against the government"—that is, that non-parties to an adverse decision against the government may not invoke the decision to preclude the government from continuing to defend the issue in subsequent litigation. *Mendoza*, 464 U.S. at 162. Instead, such nationwide judgments would create a "one-way-ratchet" under which a prevailing party could obtain relief on behalf of all others, but a victory for the government would not preclude other potential plaintiffs from "run[ning] off to the 93 other district courts for more bites at the apple." *City of Chicago v. Sessions*, 888 F.3d 272, 298 (7th Cir. 2018) (Manion, J., dissenting in part), *reh'g granted in part and vacated in part by City of Chicago v. Sessions*, No. 17-2991, 2018 WL 4268817 (7th Cir. Aug. 10, 2018).

These important concerns are plainly implicated here, because the Conference of State Bank Supervisors ("CSBS")—"the nationwide organization of financial regulators from all 50 U.S. states, the District of Columbia, Guam, Puerto Rico, American Samoa, and the U.S. Virgin Islands" (https://www.csbs.org/)—has challenged precisely the same OCC chartering proposal in the U.S. District Court for the District of Columbia. In a memorandum opinion issued four months after this Court's order, the district court held that CSBS lacked standing and its claims were unripe. *Conference of State Bank Supervisors v. Office of the Comptroller of the Currency*, No. 18-cv-2449 (DLF), 2019 WL 4194541, at *1-*3 (D.D.C. Sept. 3, 2019). In doing so, the district court noted, and respectfully disagreed with, this Court's order. *See id.* at *1 n.2. But if this Court were to enter a nationwide judgment, it would effectively nullify the D.C. district court's ruling by granting CSBS and all of its member regulators the ultimate relief they seek, despite a finding by a coordinate court that they lacked standing even to bring their claims, and despite the fact that DFS—by virtue of its geographically-limited regulatory authority, and by the express terms of its own complaint—only alleges harms with a nexus to New York.

Finally, entry of OCC's proposed judgment does not present any practical problems for either DFS or the Court. Applicants for a special purpose national bank charter are required to give public notice of their applications. *see* 12 C.F.R. § 5.8(a), which is followed by a public

4

comment period, *see* 12 C.F.R. § 5.10. OCC has also committed to notifying CSBS (of which DFS is a member) if a company submits an application for a non-deposit bank charter pursuant to 12 C.F.R. § 5.20(e)(1). *CSBS*, 2019 WL 419541, at *3. Furthermore, the chartering application process involves multiple phases and would typically occur over the course of months. *See, e.g., id.* ("based on CSBS's own contention, the median processing time between the OCC receiving and finally approving a charter application is 162 days; the average is even higher at 215 days"); Declaration of Stephen A. Lybarger, dated Feb. 25, 2019 (ECF No. 22) ¶¶ 10-20 (describing application process). Accordingly, DFS would have notice and an opportunity to be heard in the event it believed that OCC was improperly considering an application with a nexus to New York State.

For the foregoing reasons, the Court should enter the attached proposed judgment, limiting the geographic scope of DFS's relief to New York State. We thank the Court for its consideration of this letter.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By:     */s/ Christopher Connolly*
CHRISTOPHER CONNOLLY
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2761
Fax: (212) 637-2786
E-mail: christopher.connolly@usdoj.gov

Attachment (proposed final judgment)

cc:    *Plaintiff's counsel* (by e-mail)

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by _Defendant_.
>
> SO ORDERED.
>
> _10-8-19_
> DATE        VICTOR MARRERO, U.S.D.J.

5

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

LINDA A. LACEWELL, in her official
capacity as Acting Superintendent of the New
York State Department of Financial Services,

      Plaintiff,

        v.

OFFICE OF THE COMPTROLLER OF
THE CURRENCY and JOSEPH M. OTTING,
in his official capacity as U.S. Comptroller
of the Currency,

      Defendants.

18 Civ. 8377 (VM)

---

### [Proposed] FINAL JUDGMENT

WHEREAS, on September 14, 2018, plaintiff the Superintendent of the New York State

Department of Financial Services ("DFS")[1] commenced this action against defendants the Office

of the Comptroller of the Currency and Comptroller Joseph M. Otting (together, "OCC"),

challenging OCC's decision to accept applications for special-purpose national bank charters

from financial technology (or "fintech") companies, including fintech companies that do not

accept deposits;

WHEREAS, on February 26, 2019, OCC moved to dismiss DFS's Complaint (ECF Nos.

20-22); on March 19, 2019, DFS opposed the motion to dismiss (ECF No. 25); and on March 26,

2019, OCC filed a reply brief in support of its motion (ECF No. 26);

---

[1]      On May 31, 2019, in accordance with Federal Rule of Civil Procedure 25(d),
Superintendent of DFS Linda A. Lacewell was substituted as the plaintiff in this matter. (ECF
No. 31).

1

WHEREAS, in a decision and order dated May 2, 2019 (ECF No. 28), this Court denied

OCC's motion to dismiss in part, holding that the National Bank Act's "'business of banking'

clause, read in the light of its plain language, history, and legislative context, unambiguously

requires that, absent a statutory provision to the contrary, only depository institutions are eligible

to receive national bank charters from OCC";

WHEREAS, the parties have conferred and agree that the Court's May 2, 2019, order

resolves the substantive legal issues in this matter and renders the entry of final judgment

appropriate; and

WHEREAS, notwithstanding its agreement that entry of final judgment is appropriate at

this time, OCC expressly reserves its appellate rights in this matter;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      For the reasons set forth in the Court's May 2, 2019, order, the Clerk of the Court

is directed to enter final judgment in favor of plaintiff DFS, and to close this case;

2.      OCC's regulation, 5 C.F.R. § 5.20(e)(1)(i), is set aside with respect to all fintech

applicants seeking a national bank charter that do not accept deposits, and that have a nexus to

New York State, *i.e.*, applicants that are chartered in New York or that intend to do business in

New York (including through the Internet) in a manner that would subject them to regulation by

DFS;

3.      Each party shall bear its own fees and costs in this action.

2

Dated: New York, New York
_____, 2019

SO ORDERED.

_____
HON. VICTOR MARRERO
United States District Judge

3